UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION


DDG (XXX-XX-6090)                    CIVIL ACTION NO. 09-cv-1695

VERSUS                               JUDGE STAGG

U.S. COMMISSIONER SOCIAL             MAGISTRATE JUDGE HORNSBY
SECURITY ADMINISTRATION


## REPORT AND RECOMMENDATION

**Introduction**

DDG ("Plaintiff") filed an application for supplemental security income alleging a disability due to problems related to degenerative joint disease and fibromyalgia. Plaintiff, who was 51 when she filed her application, has a sixth-grade education and past work experience as a housekeeper. ALJ Larry Butler conducted a hearing and issued a written decision in which he found that Plaintiff could still perform the demands of light work and was not disabled.

The Appeals Council denied a request for review. Plaintiff filed this civil action seeking judicial review. The Commissioner's decision is, for the most part, supported by the record, but one issue leads to the below recommendation that the Commissioner's decision be reversed and the case remanded for further proceedings.

**Summary of the ALJ's Decision**

In evaluating a disability claim, the Commissioner conducts a five-step sequential analysis to determine whether (1) the claimant is presently working; (2) the claimant has a

severe impairment; (3) the impairment meets or equals an impairment listed in appendix 1 of the social security regulations; (4) the impairment prevents the claimant from doing past relevant work; and (5) the impairment prevents the claimant from doing any other substantial gainful activity.  The claimant bears the burden of showing he is disabled through the first four steps of the analysis; on the fifth, the Commissioner must show that there are jobs that exist in significant numbers that the claimant can perform. If, at any step, the claimant is determined to be disabled or not disabled, the inquiry ends. See Audler v. Astrue, 501 F.3d 446, 447-48 (5th Cir. 2007).

The ALJ found that Plaintiff was not engaged in substantial gainful activity (step one) and had severe impairments (step two), within the meaning of the regulations, in the form of degenerative disc disease, cervical spine; and history of fibromyalgia.  Tr. 18.  He found that the impairments did not meet or medically equal one of the listed impairments (step three) that would mandate a finding of disability without regard to the applicant's age, work skills, education, or other factors.  Tr. 19.

The ALJ then assessed the medical evidence and testimony and determined that Plaintiff had the residual functional capacity ("RFC") to perform the full range of light work. Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. The full range

of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday. Sitting may occur intermittently during the remaining time. To be considered capable of performing a full or wide range of light work, the claimant must have the ability to do substantially all of these activities. 20 C.F.R. §§ 404.1567(b) and 416.967(c); Social Security Ruling 83-10.

The ALJ found at step four that Plaintiff did not have past relevant work within the meaning of the regulations.  He then turned to step five, which asks whether there are other jobs available in significant numbers that Plaintiff could perform given her RFC and other vocational factors.  The ALJ looked to the Medical Vocational Guidelines.  Rule 202.10 directed a finding of not disabled for a person at Plaintiff's age (closely approaching advanced age), with the RFC to perform light work, limited or less education, and unskilled work history. Accordingly, the ALJ found that Plaintiff was not disabled.  Tr. 21-22.

**Issues on Appeal**

Plaintiff contends that the ALJ erred in finding that she can perform the full range of light work.  She claims that she has a non-exertional impairment – a reaching limitation – that the ALJ did not take into account.  Plaintiff  also points to her pain as a non-exertional factor.  If Plaintiff suffered from a significant non-exertional factor, it was inappropriate for the ALJ to rely exclusively on the Guidelines to meet his step-five burden, and he should have looked beyond the Guidelines and sought expert vocational testimony or other similar

evidence to meet his step-five burden.  See Fraga v. Bowen, 810 F.2d 1296, 1304 (5th Cir. 1987).

**Standard of Review; Substantial Evidence**

This court's standard of review is (1) whether substantial evidence of record supports the ALJ's determination, and (2) whether the decision comports with relevant legal standards.  Villa v. Sullivan, 895 F.2d 1019, 1021 (5th Cir. 1990).  "Substantial evidence is more than a scintilla and less than a preponderance.  It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Muse v. Sullivan, 925 F.2d 785, 789 (5th Cir. 1991).  A finding of no substantial evidence is justified only if there are no credible evidentiary choices or medical findings which support the ALJ's determination.  Johnson v. Bowen, 864 F.2d 340, 343-44 (5th Cir. 1988).

**Analysis**

Plaintiff has been treated since approximately 2005 by Dr. Daniels at his family medical practice.  She has complained of frequent pain in her neck and back, and the medical records include reference to fibromyalgia.  Plaintiff's complaints of pain relate primarily to her neck and shoulders, along with her back and hips.  Dr. Daniels has prescribed medications including Lortab, Valium, and Soma.  Tr. 105-24, 162-76.

Plaintiff went to the emergency room at a Willis-Knighton Hospital in April 2008. She complained of pain in the left scapular (shoulder) area, low back, and mid back.  Plaintiff said she had experienced similar episodes in the past.  On examination, she had a normal

range of motion with no evidence of vertebral point tenderness. The physician noted with regard to the back pain that Plaintiff's range of motion was painful. The impression was back pain and fibromyalgia. Plaintiff was discharged to self care in stable condition with directions to see Dr. Daniels in a few days. Her problem was described as an acute exacerbation. Tr. 178-85.

Plaintiff returned to the Willis-Knighton facility in February 2009 with a complaint of numbness to the left side of her face with speech slurring. The problem had started in the last few days. Plaintiff demonstrated 5/5 strength in all extremities and had a full range of motion throughout without no evidence of weakness. Tr. 225. Plaintiff did also complain on the visit of chronic left shoulder pain that radiates to the left mid back and left underarm. She said it was the first time the pain had radiated in that fashion, and that pain had begun two or three days earlier. Tr. 224. Plaintiff was also seen at the LSU Health Sciences Center with complaints of headaches on a couple of occasions, but those visits do not specifically relate to the limitations at issue here.

The Agency referred Plaintiff to Dr. Clinton McAlister, an orthopedic specialist, for a consultative evaluation in May 2007. Dr. McAlister reviewed the medical records from Dr. Daniels and examined Plaintiff. Plaintiff reported pain in her neck and shoulder, but no radiation down her arms. She also complained of pain in her lower back and both hips. Plaintiff said she had no trouble with her self-care skills such as dressing, bathing, showering, and eating. She said she helped her sister with light housework such as cooking

and folding clothes, but she did not vacuum or sweep.  She was able to drive.  Her normal day's activity was described as trying to stay busy around the house.  Tr. 125-26.

Dr. McAlister wrote that Plaintiff was cooperative during the exam and had some difficulty moving from the supine to sitting position, but she had no difficulty getting from the sitting to standing position.  She did have trouble with bending and squatting.  Plaintiff walked with a normal gait.  When recording the range of motion of the neck, Dr. McAlister wrote that there was pain associated with it as well as "voluntary guarding."  With respect to the shoulders, he found limited range of motion with pain and grimacing similar to the neck.  There was full motion of the elbows and wrists with 5/5 strength and good stability. Dr. McAlister wrote that Plaintiff was capable of fine manipulation, opposition, gripping, and grasping bilaterally with 5/5 grip strength and pinch strength.  X-rays of the neck showed some degenerative changes at C4-5, C5-6, and C6-7.  There were no bony or soft tissue abnormalities revealed in the right hip or right shoulder.

Dr. McAlister concluded that Plaintiff had "definite objective findings of degenerative arthritis of her cervical spine, but the symptomatology related to her neck and shoulders is out of proportion to the objective findings."  He observed that Plaintiff claimed to hurt all over with her fibromyalgia, but he found no objective findings in regard to that.  He concluded that Plaintiff could work at a light physical activity level, meaning not lifting over 20 pounds occasionally and 10 pounds frequently.  He added his opinion that Plaintiff demonstrated evidence of symptom magnification.  Tr. 127-29.

Plaintiff testified at the hearing (Tr. 231-57) that her discs were deteriorating and that she was hurting enough that day that she would probably go to the hospital after the hearing. Plaintiff claimed to experience almost constant pain, as well as daily muscle spasms that last about 15 seconds per episode.  Plaintiff said she was experiencing numbness, for the first time that day, that left her unable to raise her arm, and that was the reason she would go to the hospital after the hearing.  Plaintiff claimed she had a headache every day.  When asked what aggravates her pain, Plaintiff replied, "breathing."  She added that lifting anything or sitting in a certain position more than about 15 minutes caused pain.  Plaintiff estimated she could not stand up more than 10 or 15 minutes at a time.  She could not even lie down for more than about 45 minutes at a time.

Plaintiff said that, about two days a week, her pain is so bad she is unable to even get dressed.  Plaintiff said that, during the visit to Dr. McAlister's office, it surprised her and caused pain when the nurse, who Plaintiff thought was about to guide her somewhere, suddenly pushed the back of Plaintiff's head and forced her chin to her chest.  Plaintiff said that this caused her to be very protective each time a new test was administered, and Plaintiff offered that this explained Dr. McAlister's observations about her test efforts.  Tr. 248. Plaintiff said she just "thought" she hurt at the time of the consultative examination, but her condition had worsened significantly since then.  When asked how much she could lift, Plaintiff told about a time when she had to pick up a gallon of milk from the floor, which she

knew weighed eight pounds, and it allegedly damaged something in her neck that had worsened over time.

The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause symptoms, but Plaintiff's statements about the severity of the limiting effects were found not credible to the extent they were inconsistent with the ability to perform light work.  Tr. 21.  An ALJ's findings on credibility of the claimant and the debilitating effect of subjective symptoms, based on his first-hand observation of the claimant, are particularly within his province and entitled to judicial deference. Johnson v. Bowen, 864 F.2d 340, 347 (5th Cir. 1988); Falco v. Shalala, 27 F.3d 160, 164 (5th Cir. 1994).  The ALJ's refusal to fully credit Plaintiff's testimony was well within his authority. The extraordinary limitations claimed by Plaintiff, which depicted her as practically bedridden and helpless, were not consistent with the objective medical records.  Plaintiff obviously has medical problems, and the ALJ found as much by limiting her to mere light work, but he was not required to accept Plaintiff's unsupported testimony that she was significantly more limited by pain or other non-exertional impairment.

The ALJ's RFC was also consistent with the findings of Dr. McAlister.  Plaintiff points to the report of a state agency medical consultant who, after reviewing records including Dr. McAlister's report, completed an RFC assessment and reached a slightly different conclusion.  The agency consultant (it does not appear that the record reveals whether she is a physician or has other qualifications) made findings consistent with light

work with regard to lifting, standing, sitting, and the like.  That included a finding of unlimited ability to push and/or pull, including the operation of hand or foot controls. Tr. 135-36.  In the section of the form for manipulative limitations, the consultant found that Plaintiff was unlimited in all categories except reaching.  She wrote that reaching was limited to occasionally because Plaintiff had a restricted range of motion in the cervical spine and shoulders.  Tr. 138.  Occasionally, within the meaning of the report and the regulations, is from very little up to one-third of the time. Tr. 135.  This means it would total no more than about two hours of an eight-hour workday.  The definition of light work requires only "some pushing and pulling" of arm-hand controls. However, Social Security Ruling 85-15 explains that reaching (extending the hands and arms in any direction) is an activity required in almost all jobs, and "significant limitations of reaching" may eliminate a large number of occupations, thus requiring the ALJ to go beyond the Guidelines and hear testimony from a vocational expert or obtain similar evidence to satisfy the Commissioner's step-five burden.

State agency medical consultants are recognized as highly qualified professionals who are also experts in Social Security disability evaluation.  Their findings must be treated as expert opinion evidence of a non-examining source.  An ALJ may not ignore the opinions and must explain the weight given to them.  Social Security Ruling 96-6p. The ALJ did not specifically mention the state agency report in his decision.  He did make a conclusory statement that he had considered opinion evidence in accordance with various rulings,

including Ruling 96-6p (Tr. 20), but that is not an adequate explanation of the weight afforded to permit meaningful judicial review.

It is not surprising that the ALJ did not specifically discuss the state agency report because it is largely consistent with Dr. McAlister's findings.   The agency consultant even stated that Dr. McAlister's opinions were not significantly different from her own findings. Tr. 141.   There is, however, the specific finding by the agency consultant that reaching is limited to occasionally.   Ruling 85-15 suggests that a significant limitation of reaching would eliminate a large number of occupations.   Under these circumstances, the ALJ's decision is not supported by substantial evidence.   The decision should be reversed and the case remanded.

On remand, the Commissioner may assess and explain the state agency finding regarding reaching, consider evidence from a vocational expert, or otherwise address this issue.   There are perhaps ways of assessing the record that would allow discounting of the state agency's finding regarding reaching, but it would not be proper for the court to do so. "The ALJ's decision must stand or fall with the reasons set forth in the ALJ's decision, as adopted by the Appeals Council." Newton v. Apfel, 209 F.3d 448, 455 (5th Cir. 2000).  See also Cole v. Barnhart, 288 F.3d 149, 151 (5th Cir.2002) ("It is well-established that we may only affirm the Commissioner's decision on the grounds which he stated for doing so.").

On remand, Plaintiff and the agency may further explore the issues addressed herein or any other relevant matters.  See 20 C.F.R. § 404.983 (following a federal court remand,

"[a]ny issues relating to your claim may be considered by the administrative law judge whether or not they were raised in the administrative proceedings leading to the final decision in your case.").  See also Social Security Law and Practice, § 55:74 (there is ordinarily "no limit on a claimant's supplementing the record on remand" after a sentence four or sentence six remand).

Accordingly,

**IT IS RECOMMENDED** that the Commissioner's decision be reversed and, pursuant to sentence four of 42 U.S.C. § 405(g), this case be remanded to the Commissioner for further proceedings consistent with this Report and Recommendation.

### Objections

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b).  A party may respond to another party's objections within seven (7) days after being served with a copy thereof.  Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 14 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to

proposed factual findings and legal conclusions accepted by the district court.  See <u>Douglass</u>

<u>v. U.S.A.A.</u>, 79 F.3d 1415 (5th Cir. 1996) (en banc).

THUS DONE AND SIGNED in Shreveport, Louisiana, this 18th day of January, 2011.


_____
MARK L. HORNSBY
UNITED STATES MAGISTRATE JUDGE